**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re** | : | Chapter 7 |
| **Bruno Marco Carbone** | : | |
| Debtor | : | Case No. 18-13852 (JKF) |
| _____ | | |
| **Lynn E. Feldman, Trustee** | : | |
| Plaintiff | : | |
| v. | : | |
| **Bruno Marco Carbone and Melissa Carbone** | : | |
| Defendants | : | Adv. No. 18-00239 (JKF) |
| _____ | | |

# **OPINION**

By: JEAN K. FITZSIMON, United States Bankruptcy Judge.

*Introduction*

      The Trustee has sued the Debtor and his wife to avoid and recover the Debtor's prepetition transfer of his home. The Trustee maintains that the transfer constitutes a fraudulent conveyance under applicable non-bankruptcy law. The Defendants filed an Answer to the Complaint asserting that the transfer was legitimate. Now before the

1

Court is the Trustee's Motion for Summary Judgment. The Motion is opposed. For the reasons which follow, the motion will be denied.[1]

*Causes of Action*

The Trustee brings this action under the Pennsylvania Uniform Voidable[2] Transfer Act (the Act), 12 P.S. § 5101, *et seq*. (made available to trustees by 11 U.S.C. § 544(b)(1)). Her claims are based, alternatively, on the actual fraud provision of the Act, 12 P.S. § 5104(a)(1), and the constructive fraud provision, § 5104 (a)(2). The Trustee bears the burden of proof on this claim and may meet that burden by a preponderance of the evidence. *Id*. § 5104(c).

*Applicable Standard*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

---

[1] Because this matter involves the avoidance and recovery of a fraudulent transfer, it is within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(H) (including among core proceedings suits to avoid and recover fraudulent conveyances)

[2] The statute was amended in 2017 to change the title from the Pennsylvania Uniform *Fraudulent* Transfer Act to the Pennsylvania Uniform *Voidable* Transfer Act. The substance of the statute did not change.

The court's role in deciding a motion for summary judgment is not to weigh evidence, but rather to determine whether the evidence presented points to a disagreement that must be decided at trial, or whether the undisputed facts are so one sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–252, 106 S.Ct. at 2512. In making this determination, the court must consider all of the evidence presented, drawing all reasonable inferences therefrom in the light most favorable to the nonmoving party, and against the movant. *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may not simply rest on its pleadings but must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Such evidence must be sufficient to support a jury's factual determination in favor of the nonmoving party. *Anderson, supra*, 477 U.S. at 249, 106 S.Ct. at 2511. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). If the nonmoving party fails to adduce sufficient evidence in connection with an essential element of the case for which it bears the burden of proof at trial, the moving party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552.

*Analysis of the*
*Actual Fraud Claim*

The Motion begins with the claim that the transfer constitutes actual fraud on the Debtor's part. That offense is set forth in § 5104 of the Act which states, in pertinent part:

> **(a) General rule.--**A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor;

12 P.S. § 5104(a)(1).

Because there is no dispute over whether the transfer was made,[3] the Court may proceed directly to the evidence bearing on the Debtor's state of mind. Since "individuals are rarely willing to admit intent, actual fraud is rarely proven by direct evidence." *In re Pennsylvania Gear Corp.,* 2008 WL 2370169, at *9 (Bankr.E.D.Pa. April 22, 2008). However, there are factors, commonly referred to as "badges of fraud," which courts consider in determining whether fraud has been proven by circumstantial evidence. *Holber v. Dolchin Slotkin & Todd, P.C. (In re American Rehab & Physical Therapy, Inc.),* 2006 WL 1997431, at *15 (Bankr.E.D.Pa. May 18, 2006). The Act provides a non-exhaustive list of such factors for use in determining whether "actual intent" exists:

> In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:
>
> (1) the transfer or obligation was to an insider;
>
> (2) the debtor retained possession or control of the property transferred after the transfer;

---

[3] *See* Ans., ¶ 29.

4

>(3) the transfer or obligation was disclosed or concealed;
>
>(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>(5) the transfer was of substantially all the debtor's assets;
>
>(6) the debtor absconded;
>
>(7) the debtor removed or concealed assets;
>
>(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
>(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 P.S. § 5104(b). Courts differ on how to apply these "badges." *Compare In re Valley Bldg. & Const. Corp.*, 435 B.R. 276, 285 (Bankr.E.D. Pa. 2010) (requiring a finding of "goodly" number of these factors to establish fraudulent intent) with *In re Cohen*, 142 B.R. 720, 728 (Bankr.E.D.Pa.1992) (stating that a "strong finding" as to just one badge will suffice); *see also In re Cook,* 126 B.R. 261, 269 (Bankr.E.D.Tex. 1991) *quoting In re: Penner,* 107 B.R. 171, 176 (Bkrtcy.N.D.Ind.1989) (stating that just one factor can support a finding of fraud and that "[t]he accumulation of several factors can lead inescapably to the conclusion that the debtor possessed a requisite intent.") A leading commentator explains that "[w]hatever badges of fraud a court uses, no particular badge is necessary, nor is any combination sufficient. The matter is always factual—the presence of badges of fraud permits but does not compel a finding of actual intent." 5 *Collier on Bankruptcy* ¶ 548.04[1][b][ii]

5

Certainly, the analysis should entail more than just totaling up the number badges for which evidence is adduced. This may be due, in part, to the disparate nature of the factors. One Bankruptcy Court confronted with the same issue, i.e., whether the debtor's conversion of nonexempt into exempt assets was intentional fraud or good faith estate planning,[4] recognized this. *See In re Crater*, 286 B.R. 756 (Bankr.D.Ariz. 2002). So before beginning an analysis of the fraud badges, the *Crater* Court sorted them into three types:

> Some of the badges are themselves *indicative of* concealment, deception *or fraudulent intent*:
>
> > 2. The debtor retained possession or control of the property transferred after the transfer;
> >
> > 3. The transfer or obligation was ... concealed;
> >
> > 6. The debtor absconded; and
> >
> > 7. The debtor removed or concealed assets.
>
> A *second category* of badges consists of three of them that *do not implicitly suggest fraud* but do suggest there must have been a motivation other than the transaction itself because it was not an economically rational decision for a debtor to make but for its effect to hinder or delay creditors:
>
> > 1. The transfer or obligation was to an insider;
> >
> > 8. The value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> >
> > 11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
>
> The *third category*, however, consists of badges that may be *innocent in themselves*, or are merely timing factors that become suspicious only when combined with other factors:

---

[4] Albeit in a slightly different context: Whether that conduct was sufficiently fraudulent for denial of discharge under § 727(a)(2)(A).

> 4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> 5. The transfer was of substantially all of the debtor's assets;
>
> 9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and
>
> 10. The transfer occurred shortly before or shortly after a substantial debt was incurred.

*Crater*, *supra*, 286 B.R. at 764–65; *See also In re Glunk*, 342 B.R. 717, 733 (Bankr.E.D.Pa.2006) (adopting the *Crater* analysis). The Court will analyze the evidence similarly.

*Direct Indications*
*Of Fraudulent Intent*

From this category, the Plaintiff maintains that two badges of fraud exist: the Debtor retained the property even after having transferred it, and he removed assets. For its part, the Court finds that only the first badge is supported by the record: the transferor's retention of the property transferred. The Debtor transferred his home to his wife *and to himself.* His filings reflect that he continues to reside in and own (along with his wife) that property. *See* Voluntary Petition. His continued possession and control of the property is an indication of fraud. *See In re Spitko,* 357 B.R. 272, 302 (Bankr.E.D.Pa. 2006) *quoting Matter of Hughes,* 184 B.R. 902, 908 (Bankr.E.D.La. 1995) ("[t]he retention of the use of transferred property very strongly indicates a fraudulent motive underlying the transfer.").

What the record does not demonstrate is that the Debtor removed or concealed assets. The Trustee alleges that the Debtor "removed" an asset because the transfer served to place the home out of the reach of his creditors. Mot. ¶ 39 [quotations in original]. The Court does not necessarily agree with the Plaintiff's characterization of the

7

transfer as the removal of an asset. Indeed, the Trustee's decision to wrap the word "removal" in quotations marks is an indication of how strained the metaphor is. Real estate is fixed and cannot be moved. *See United States v. Johnson*, 2007 WL 1695740, at *6 n.3 (D. Minn. Mar. 30, 2007) (explaining that the "badge of fraud" that concerns the *concealing or removal of property* is plainly inapplicable where transfer at issue concerns real property) (emphasis added).

*Implicit Suggestion*
*Of Fraudulent Intent*

The Trustee identifies two badges of fraud in this category: that the transfer was to an insider, and that in exchange for what was transferred, reasonably equivalent value was not paid. The Court agrees that the evidence supports both contentions.

The Act's definition of "insider" is derived from the Bankruptcy Code. *See* 12 P.S. § 5101, Comment 8. The Code defines "insider" to include relatives. *See* 11 U.S.C. § 101(31)(A)(i). The term "relative" is, in turn, defined to include an "individual related by affinity..." 11 U.S.C. § 101(45). That, of course, would include the Debtor's spouse and so the Court finds that she is an insider for purposes of this analysis.

But just as probative as to fraudulent intent is the absence of consideration paid. The deed which memorializes the transfer recites that in exchange for the home, the Debtor and his wife paid $1. Where a debtor transfers property without, or for nominal, consideration, a rebuttable presumption of fraud arises. *In re Kennedy*, 566 B.R. 690, 710 (Bankr. D.N.J. 2017). Transfers between relatives are "carefully scrutinized." *In re Horob Livestock, Inc.,* 382 B.R. 459, 488 (Bankr.D.Mont. Dec. 17, 2007). *See also In re Lang,* 246 B.R. 463, 470 (Bankr.D.Mass.2000) ("[m]ost courts agree that when a debtor transfers property gratuitously or to relatives in the shadow of a bankruptcy filing, a

8

presumption of fraudulent intent arises") (citing cases); *In re Chastant,* 873 F.2d 89, 91 (5th Cir.1989) ("a presumption of actual fraudulent intent necessary to bar a discharge arises when property is either transferred gratuitously or is transferred to relatives.") Because it appears from the record that the transfer was both to an insider as well as gratuitous, these factors strongly indicate fraud on the Defendants' part.

*Probative Value*
*Based on Circumstance*

From the third and final category of fraud badges, the Trustee identifies all four as being established by the record. The Court's analysis does not confirm that conclusion. To the contrary, it finds that only the first is barely proven and its probative value is marginal at best.

The Plaintiff begins with badge #4: that before the Debtor made the transfer, he had been sued or threatened with suit. While the transfer occurred after the suit was filed, six years would pass before the transfer was made. That amount of time makes it less of an indication that the transfer necessarily occurred in response to the lawsuit. In other words, the Court does not find the timing of the transfer to be particularly suspicious.

Next comes the claim that the transfer was of "substantially all the debtor's assets (there were no remaining assets after the transfer)." Mot. ¶ 40(5). However, the Trustee cites to no evidence in this record to support this point. Nor is the Court aware of any available proof as to which it might take judicial notice. While the Schedules reflect no assets, they were filed 2 1/2 years after the transfer and are, therefore, no indication of financial condition *on the date he transferred his home:* November 2015.

So contrary to the Plaintiff's contention, the record contains no evidence as to what assets the Debtor might have had after making the transfer.

The third factor considers the Debtor's financial condition when he made the transfer or the effect that the transfer had on it. The record, however, is simply devoid of evidence on this point. So the Court cannot determine whether he was insolvent when he transferred the property, whether he was made insolvent by it, or if he had the financial wherewithal to satisfy the Plaintiff's claim but was, instead, prepared instead to litigate into perpetuity.

The fourth factor returns to the question of timing: it asks if the transfer was made just before, or right after, the debtor was about to incur substantial debt. To prove that it did, the Trustee asserts that the transfer occurred 15 months before an arbitration award was entered against the Debtor and almost two years before the award was confirmed by the state court. While the Defendants do not dispute this (*See* Ans. ¶¶ 20-23), the transfer of the home was not *just* before (or *just* after) the judgment would be entered against him. A difference of one year between the date he transferred the home until the date of entry of an arbitration award does not indicate that the transfer was made in response to, or anticipation of, a judgment.

*Assessment of the
Proofs as to Fraud*

Because the context is summary judgment the Court has analyzed the Plaintiff's proofs in order to determine if she has met her threshold burden of proof. Of the eight purported badges of fraud identified by the Trustee, the Court would identify but 4: ## 1, 2, 4, and 8. Of those four, the weakest badge involves the transfer having been made after the Debtor had been sued. There, that litigation had been ongoing for over

10

six years when the transfer occurred and would continue for another 18 months before the bankruptcy case was filed. Not all that much weight should be attributed to that factor. More probative is what the Court found in the first group, direct indications of intent. There, the evidence is that the Debtor remains in possession of the home (albeit with his wife) after having conveyed it to the marital entity. But it is from the second group, conduct which implicitly suggests fraud, that the evidence of fraudulent intent is glaring: the transfer was to an insider (his wife) and for essentially no consideration. Indeed, this is the archetypical fraudulent transfer: to a relative and for no consideration. *See In re LXEng, LLC*, 607 B.R. 67, 92 (Bankr.D.Conn. 2019) (stating that transfer of property to spouse as classic badge of fraud); *In re Roti*, 271 B.R. 281, 297 (Bankr.N.D.Ill. 2002) (citing as classic example of actual fraud debtor's placing of asset in name of insiders, under his control and direction, and to frustrate creditor's collection efforts); *In re Collins*, 540 B.R. 54, 60 (Bankr.E.D.N.Y. 2015) (listing transfer to spouse while retaining use of transferred property as classic badge of fraud); *In re Gipe*, 157 B.R. 171, 177 (Bankr.M.D.Fla. 1993) (listing amount factors indicating classic, orthodox fraudulent transfer the existence of a family relationship and the lack, or inadequacy, of consideration). So while those two indications are somewhat supported by other factors, they are enough to meet the Plaintiff's threshold burden of proving that the Debtor transfer of his home is actual fraud under the PUVTA.

*Defendants' Evidence*

That places upon the Debtor and his wife the responsibility of offering evidence demonstrating that no fraud was intended by the transfer. It is the Debtor's explanation that the transfer was not intended to thwart creditors but was, instead, overdue

11

compensation for his wife's regular financial contributions to their household. In support that claim, the Defendants have offered excerpts of the deposition of Mrs. Carbone. Therein, she stated that she put $10,000 into the construction of the house. *See* Def's Br., Ex. A. p. 50. She also explained that the title to the property was placed solely in her husband's name because her credit rating made her a poor candidate for a mortgage loan. *Id.* at 51 Finally, she testified that she and the debtor intended to title the property in both of their names but they "just never got around to doing it." *Id.* 52-53. While this testimony is somewhat self-serving, it is enough to require a trial on the question whether they intended to defraud the husband's creditors when he transferred the home. See *In re Polichuk*, 506 B.R. 405, 418 (Bankr.E.D.Pa. 2014) (stating that "[u]ltimately, under both the Bankruptcy Code and PUFTA, the determination whether the transfer was made with fraudulent intent is a question of fact that is rarely susceptible to resolution at the summary judgment stage.") For that reason, the Plaintiff's request for summary judgment must be denied at this time.

*Constructive Fraud*

Alternatively, the Trustee seeks to avoid and recover the transfer of the Debtor's home as an instance of constructive fraud. In that regard, the PUVTA provides:

> **(a) General rule.--**A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> …
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (i) was engaged or about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

12

> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 P.S. § 5104(a)(2) (emphasis added). The Third Circuit has set forth a two-pronged analysis for determining if a transferee furnished reasonably equivalent value: first, the transferee must have given some "value;" and second, if value was given, it must be reasonably equivalent to what the debtor gave up. *See In re R.M.L., Inc.*, 92 F.3d 139, 149 (3d Cir. 1996).

On the question of whether any value was received, the Defendants maintain that value has been furnished by the Debtor wife. They explain that she put $10,000 into the property when it was purchased. *See* Def.'s Br. Ex. A at p. 50. They add that she has been making 8 years of mortgage payments on the 3 liens which presently encumber the property which the Debtor transferred. *See* Joint Pretrial Statement, V, B, 3 at p. 11.

Even assuming this is true, what matters is the timing of the exchange of that purported value. At the continued Pretrial Conference in this matter, the Court raised the question as to whether reasonably equivalent value must be exchanged *at the same time* that the Debtor transferred the property. In other words, if it did, then the wife's purported contributions to the house construction and mortgage loan could *not* be considered in determining reasonably equivalent value. The Court then asked the parties to brief the question and took the question under advisement. And the Court concluded that reasonably equivalent value must be tendered at the time of the transfer. *See* Order entered November 14, 2019, D.I. # 58. Most importantly, that ruling is now final under the law of the case doctrine. That doctrine "limits re-litigation of an issue

once it has been decided in an earlier stage of the same litigation." *Bowers v. City of Philadelphia*, 2008 WL 5234357, at *3 (E.D. Pa. Dec. 12, 2008) *quoting Hamilton v. Leavy,* 322 F.3d 776, 786-87 (3d Cir.2003) (citation omitted); *see also ACLU v. Mukasey,* 534 F.3d 181, 187 (3d Cir.2008) ("Under the law-of-the-case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citations omitted). Having concluded earlier that the exchange was not supported by reasonably equivalent value, that finding applies with equal force here.

*Debtor's Resulting Financial Condition*

But in addition to a lack of a fair exchange, the Plaintiff must also show that the transaction had a detrimental financial effect on the Debtor. In her Motion, the Trustee avers that "following the conveyance of his real property, Bruno Carbone was left insolvent." Mot. ¶ 21. This is an odd statement given that 25 paragraphs later into the Motion, the Trustee alleges—correctly—that insolvency is *not* a required element under the PUVTA. *Id.* ¶ 46. She then proceeds to allege just 2 paragraphs later that the "Defendants cannot show by clear and convincing evidence that … Bruno was solvent at the time he transferred his property." *Id.* ¶ 48

These statements reveals 3 misconceptions: first—and it bears repeating—insolvency is *not* an element of the constructive fraud claim under the PUVTA; second, unlike a preference proceeding under the Bankruptcy Code, there is no presumption of insolvency[5]: the burden of proof as to the transferee's financial condition is on the plaintiff, *see* 12 P.S. § 5104(c); *see also In re David Cutler Indus., Ltd.*, 502 B.R. 58, 73

---

[5] *See* 11 U.S.C. § 547(f)(presuming insolvency, for preference purposes, for the 90 days prior to bankruptcy)

14

(Bankr. E.D. Pa. 2013) (stating that the party challenging the transfer bears the burden of proving all of the elements of a constructive fraudulent transfer claim under PUVTA § 5104(a)(2); and, third, the standard of proof applicable to a constructive fraud claim is the preponderance of the evidence, *see* 12 P.S. § 5104(c); *see also In re C.F. Foods, Inc.*, 280 B.R. 103, 115 (Bankr.E.D.Pa. 2002).

Having determined the evidentiary allocation and standard, the Court turns to the Plaintiff's proofs. She may carry this burden in either of two ways: the transfer must have left the debtor with unreasonably small assets as compared to what he transferred (§5104)(a)(2)(i)), or the debtor intentionally incurred, or should have believed that he would incur, debts beyond his ability to pay (§5104)(a)(2)(ii)). Subsection (a)(2)(i) envisions the debtor being left in a state "short of equitable insolvency" as a result of the transfer. *See Moody v. Security Pacific Business Credit, Inc.*, 971 F.2d 1056, 1069 (3d Cir.1992) . Subsection (a)(2)(ii) refers to the debtor's resulting inability to generate sufficient profits to sustain operations. *See In re Rocky Mountain Holdings, Inc.,* 782 F.Supp.2d 106, 118 (E.D.Pa.2011)

The motion, however, provides no evidence as to the Debtor's financial condition at the time of the transfer. That transfer occurred in November 2015, but the Trustee has offered no evidence as to the Debtor's financial condition as of that date. There is no balance sheet, income statement, tax return, or bank statement for the relevant time period. Without evidence on that point, the Court cannot determine what financial effect the transfer had on the Debtor. For that reason, the Court must deny her request for summary judgment as to the constructive fraud claim.

*Summary*

The Trustee's actual fraud claim cannot be ruled upon without the Court conducting a trial to weigh the competing evidence. The Trustee's request for summary judgment on the constructive fraud claim is not support by evidence on all of the elements of that claim. Accordingly, the motion for summary judgment is denied.

An appropriate Order follows.

BY THE COURT

Dated: February 6, 2020

Jean K. FitzSimon
United States Bankruptcy Judge

Copies to:

<u>Plaintiff's Counsel</u>
Robert J Birch, Esquire
325 Sentry Parkway
Blue Bell, Pa 19422
Email: robert@robertbirchlaw.com

<u>Defendants' Counsel</u>
Joseph L Quinn, Esquire
Ross, Quinn & Ploppert, P.C.
192 S. Hanover Street, Suite 101
Pottstown, PA 19464
Email: CourtNotices@rqplaw.com