**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re** | : | **Chapter 7** |
| **Bruno Marco Carbone** | : | |
| **Debtor** | : | **Case No. 18-13852 (JKF)** |
| **Lynn E. Feldman, Trustee** | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| **Bruno Marco Carbone and Melissa Carbone** | : | |
| **Defendants** | : | **Adv. No. 18-00239 (JKF)** |

# OPINION

By: JEAN K. FITZSIMON, United States Bankruptcy Judge.

*Introduction*

Before the Court is the Plaintiff's Motion for Reconsideration of the Order Denying Summary Judgment. The Defendants oppose the Motion. For the reasons which follow, the Motion will be denied.[1]

*Standard for Reconsideration*

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *In re Wile,* 310 B.R. 514, 516

[1] As this ruling pertains to a complaint to avoid a fraudulent transfer, it is within this Courts "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(H).

(Bankr.E.D.Pa.2004) *citing Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), cert. denied, 476 U.S. 1171, 106 S.Ct. 2895, 90 LEd.2d 982 (1986). "[A] Rule 59(e) motion allow[s] the court to reevaluate the basis of its decision.... Motions for reconsideration are not at the disposal of an unsuccessful party to "rehash" the same arguments and facts previously presented." *Keyes v. National Railroad Passenger Corporation,* 766 F.Supp. 277, 280 (E.D.Pa.1991); *see also Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993), *aff'd in part, rev'd in part on other grounds,* 57 F.3d 270 (3rd Cir. 1995). "[W]hatever may be the purpose of Rule 59(e) it... [was not] ... intended to give the unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor,* 444 F.Supp. 879, 889 (E.D.Va.1977). "Federal courts should grant such motions sparingly because of their strong interest in finality of judgment." *Selaras v. M/V Cartagena de Indias,* 959 F.Supp. 270, 272 (E.D.Pa.1997) *quoting Continental Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995).

*Grounds for Reconsideration*

From this Court's denial of summary judgment, Plaintiff identifies three instances where this Court erred. All three pertain to her claim of actual fraud under the Pennsylvania Uniform Voidable Transfer Act, 12 P.S. § 5101, et seq. The Plaintiff maintains that the Court should have found the record to conclusively establish three particular "badges" of fraud but did not. They are:

- That the Debtor removed assets, § 5104(b)(7);
- That the Debtor transferred his home during the pendency of litigation, § 5104(b)(4);
- That the Debtor was insolvent when he made the transfer, § 5104(b)(9)

*Removal of Assets*

The motion for summary judgment maintained that "the debtor removed or concealed assets (Bruno Carbone removed the Cirak Property from the creditors' execution)." Mot. Summ. Judg. ¶ 40(7). In support of this statement Plaintiff offered the decision from the District Court for the Eastern District of Pennsylvania, *Klein v. Weidner*, 2010 WL 27910 (E.D.Pa. Jan. 6, 2010). That case was another instance of a husband transferring property owned solely by him to his wife and to himself. *Id*. at *1. His ex-wife sought to avoid the transfer under the Pennsylvania Uniform Fraudulent Transfer Act, the predecessor statute to the PUVTA. She proceeded under the actual fraud provision of the statute. In finding that the husband made the transfer with actual intent to defraud his ex-wife, the District Court found, *inter alia*, that "[]Weidner 'removed' assets in the sense that, by transferring the property to himself and his wife as tenants by the entireties, he removed the Property from the reach of all of his creditors, including [his ex-wife]." *Id*. at *2.

In not finding that interpretation to be persuasive, this Court explained it as a literal reading of the word. Real estate is fixed and, therefore, cannot be removed (or, for that matter, concealed). Opin. at 8. It pointed out that the Trustee's overly broad reading of the word was demonstrated by its (and the *Klein* case's) decision to wrap the words in quotation marks. *Id*. The Court stands by its reading of the word removal and will take this opportunity to expand upon its analysis.

The Plaintiff's reading of the term is inconsistent with principles of statutory construction and in two ways. First, it fails to give the word its plain meaning. *See United States v. Apfelbaum*, 445 U.S. 115, 121, 100 S.Ct. 948, 952 (1980)(explaining

that absent a statutory definition, courts must give words in a statute their plain meaning) By wrapping the word in quotations marks and following it with the prepositional phrase *in a sense* the Plaintiff does just the opposite: it redefines the term. That ignores the definition given to the word removal: to take off or away from the position occupied." *See* Conc. Oxford Eng. Dict. That is something quite different from retitling ownership of property. What removal entails then is some physical act of displacement. *See also* 12 P.S. § 5104, Uniform Law Comment, ¶ 7(g) (offering as examples of removal of assets for this fraud badge two cases both of which involved the physical removal of goods or actual concealment of their whereabouts in order to deceive a creditor). What a transfer means in this context is the "making over of (property, the right, or a responsibility) to another." Conc. Oxford Eng. Dict. There is no connotation of removal in that.

And there is a second, larger way in which the Plaintiff's reading of removal is unsupportable. More than the obligation to give a particular word its true meaning, the statute must be interpreted as whole to respect its integrity. Among the cardinal principles of statutory construction is that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant. *Ambulance Ass'n of Pennsylvania v. Highmark, Inc.*, 464 F. App'x 63, 67 (3d Cir. 2012). To interpret the removal of assets badge as Plaintiff would have the Court understand it would be to render redundant a different fraud badge. The premise of Plaintiff's reading is that the *transfer* of Debtor's home is the *removal* of his assets. But Badge #3 already asks if "the transfer was disclosed or concealed." 12 P.S. § 5104(b)(3). The Trustee did not raise that fraud badge and so the answer to it was

that the Debtor did not. But if the transfer of the Debtor's home is a removal of an asset then Fraud Badge #3 must be answered in the affirmative. In short, the Trustee's interpretation of the statute is simply unworkable. For that reason, as well, the Court sees no reason to reconsider its refusal to find that the Debtor removed an asset when he transferred his home.

*Timing of the Transfer*

The next error identified by the Trustee is the Court's failure to find that "before the transfer was made …, the debtor had been sued or threatened with suit."12 P.S. § 5104(b)(4). The Trustee explains that the Court should not have placed any emphasis on the amount of time that passed between when suit was filed and when the transfer occurred: the fact that the transfer was made after the lawsuit is enough to find fraudulent intent. In support of that position, the Trustee cites *Mid-Penn Bank v. Farhat*, 74 A.3d 149 (Pa.Super. 2013). Like this case, *Farhat* involved a challenge to a transfer of real estate made after legal action was threatened against a borrower. In undertaking a badges of fraud analysis, the Superior Court found that "[m]oreover, the certified record confirms that the transfer took place after Appellant threatened to file suit." *Id.* at 154.

From this statement, the Trustee would have the Court apply a bright-line rule: regardless of whether the transfer occurred one day, or one year, after the threat of litigation, the transfer is fraudulent per se. This is surprising given that the *Farhat* court did not provide any such analysis that would support that reading. What appears to this Court to be more illuminating as to the *Farhat* Court's thinking is the specific timing of the transfer. On December 23, 2009, Farhat was informed by the lender's loan officer

that he needed to start making principal payments on his loan or provide additional collateral. Sometime shortly thereafter, but before the transfer was made, the lender's senior vice president and chief credit officer demanded that he either provide security or pay the loan in full. Three weeks later, Farhat transferred real property to his father and neither paid off the loan nor provided collateral. In reading the *Farhat* decision, this Court finds that these specific facts informed the Superior Court's finding that the timing of the transfer indicated fraud. No such facts exist here. What the record consists of as to timing is that the transfer occurred six years after suit was filed against the Debtor.[2] So this is not a case—unlike *Farhat*—where the debtor won the race to the courthouse to avoid entry of a judgment. No firm conclusions can be drawn as to the Debtor's intentions *when* he transferred the home.

*Insolvency*

The third and last error which the Trustee points out is the failure to have found that the Debtor was insolvent at the time of the transfer. In its Opinion, the Court found no evidence on the question of insolvency. Opin. at 10. The Trustee maintains that this is incorrect because in his Answer to the Complaint, the Debtor admitted that he could not pay his bills. Mot. at 4. Such an admission, explains the Trustee, constitutes proof of insolvency as defined by the statute. *See* 12 P.S. § 5102(b) (presuming insolvency where a debtor is generally not paying their debts as they become due).

---

[2] The Court's own research unearthed a case which found that this fraud badge was met when the transfer occurred almost 8 years after suit was filed. See *In re Bifani*, 493 B.R. 866, 871-72 (Bankr.M.D.Fla. 2013). While that case has many structural similarities to the instant proceeding, the factual record was more developed. The litigation that had been going on for nearly a decade was on appeal for most of the time. After the appeal was resolved putting the case back on the state court's calendar, the debtor made the transfer which the trustee sought to avoid. In our case, there is no such triggering event in the record.

The Court identifies two problems with the Plaintiff's position here. First, the Debtor did not expressly admit that he was "not paying his debts as they came due." In his denial of the allegation that he did not receive reasonably equivalent value in exchange for the transfer of the home, the Debtor sought to explain the form of the value exchanged. That value was the wife's contribution to the marital household, which was to pay, inter alia, the mortgage, a debt which he could not pay himself. *See* Ans. ¶ 31. This is simply not specific enough to constitute an admission of a material fact.

But upon rereading of the motion for summary judgment, the Court sees that the Debtor's solvency was not a material fact for the actual fraud claim. Neither that motion (nor the Complaint, for that matter) listed insolvency among the badges of fraud established by the evidence. That, however, was the time to raise the point. The applicable rule provides that a "party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by … citing to particular parts of materials in the record, including … *admissions*." F.R.CP. 56(c)(1)(A) [emphasis added].[3] It cannot be raised now because only evidence which is new may be offered in support of a request for reconsideration. *See Blystone v. Horn,* 664 F.3d 397, 416 (3d Cir. 2011) (holding that evidence "that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration") (quoting *Harsco v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985)).[4] Any evidence on insolvency must wait until trial.

---

[3] Made applicable to adversary proceedings by B.R. 7056.

[4] While Rule 56 gives the Court discretion to consider evidence elsewhere in the record (see Rule 56(c)(3) (requiring the court to consider only the cited materials, but allowing it to consider other materials in the record)), the Debtor's statement as to why has was not paying the mortgage is offered in a context other than his general solvency. His statement is an explanation of a fact different that which the Plaintiff seeks to establish. It has little probative value, then, for the purpose offered.

*Summary*

The Court is unpersuaded by any of three points which the Plaintiff would have it reconsider. Her first argument is based upon a misconstruction of the statute. The second interprets an element of the Plaintiff's case in an overly technical way. The third and final badge was not raised on summary judgment and the evidence in support of it was not offered in her motion. Accordingly, the request for reconsideration is denied.

An appropriate order follows.

BY THE COURT

Dated: March 31, 2020

Jean K. FitzSimon
United States Bankruptcy Judge

Copies to:

Plaintiff's Counsel
Robert J Birch, Esquire
325 Sentry Parkway
Blue Bell, Pa 19422
Email: robert@robertbirchlaw.com

Defendants' Counsel
Joseph L Quinn, Esquire
Ross, Quinn & Ploppert, P.C.
192 S. Hanover Street, Suite 101
Pottstown, PA 19464
Email: CourtNotices@rqplaw.com